IN THE MATTER OF THE APPLICATION OF THE STATE BANK OF PLAINFIELD FOR A CHARTER FOR A BANK TO BE LOCATED AT 20-34 SOMERSET STREET, IN THE CITY OF PLAINFIELD, COUNTY OF UNION, STATE OF NEW JERSEY.

Superior Court of New Jersey
Appellate Division

Argued February 2, 1960—Decided April 19, 1960.

152

Before Judges PRICE, GAULKIN and SULLIVAN.

*Mr. John J. Clancy* argued the cause for appellant The Plainfield Trust State National Bank (*Messrs. Clancy & Hayden,* attorneys).

*Mr. H. Douglas Stine* argued the cause for respondent The State Bank of Plainfield.

*Mr. David Landau,* Deputy Attorney General, argued the cause for Charles R. Howell, Commissioner of Banking and Insurance (*Mr. David D. Furman,* Attorney General).

*Messrs. Sauer and Kervick,* attorneys for appellant Suburban Trust Company, filed statement in lieu of brief.

The opinion of the court was delivered by

SULLIVAN, J. A. D. The Commissioner of Banking and Insurance of the State of New Jersey approved the application of the proposed "State Bank of Plainfield" for the charter of a bank to be located at 20–34 Somerset Street, Plainfield, New Jersey. Two objector banking institutions appeal.

The stenographic record of the hearing before the Commissioner consists of more than 400 pages. Several detailed studies and reports involving matters pertinent to the application were marked in evidence.

The substance of applicant's proof was that the City of Plainfield was located in an area which was undergoing

marked growth in population and industry, and that because of its strategic location Plainfield was and would continue to be a center for trade, business and banking. It was forecast that banking needs in the area would substantially increase within the next few years. It was also shown that the recent consolidation of the Plainfield Trust Co., the State Trust Co., the Plainfield National Bank, and all their branches into the Plainfield Trust State National Bank, had left Plainfield with this one commercial bank, except for a branch office of the Suburban Trust Company. The dominant position of the new Plainfield Trust State National Bank was pointed to as a potential for monopoly. In the opinion of the experts produced by applicant, all of the foregoing factors indicated that the proposed bank would be successful, and its establishment would serve the interest of the public and would not adversely affect existing banking facilities in the area.

The objectors, who included the present appellants, the Plainfield Trust State National Bank and the Suburban Trust Company, argued that Plainfield's position as a trade, business and banking center had been overstated. It was submitted that present banking facilities in Plainfield were competitive and were adequate to handle actual as well as prospective banking needs. Objectors' experts not only said that there was no need for another commercial bank in Plainfield, but they also voiced the fear that the establishment of a new bank, in all probability, would result in serious disadvantage to the community, the proposed bank itself, and all other financial institutions in Plainfield.

Sometime after the hearing was concluded the Commissioner filed a decision, determination and order granting the application. His ruling will be discussed in resolving the several questions presented by this appeal.

Preliminarily, it is argued that the Commissioner, in part at least, went outside the record and considered evidence which appellants have not had the opportunity to meet. This

point is made because of the following reference in the Commissioner's decision to an "independent investigation" made by him in connection with this application.

"In addition, as provided by section 11 of The Banking Act, relevant facts and circumstances arising out of my independent investigation were considered. All exhibits or facts which I considered are of record in our case file."

This is charged to be a violation of the rule set forth in *Mazza v. Cavicchia*, 15 *N. J.* 498 (1954), and *Elizabeth Federal Sav. & Loan Ass'n v. Howell*, 24 *N. J.* 488 (1957), that where a hearing is prescribed by statute, nothing must be taken into account by the administrative tribunal in arriving at its determination that has not been introduced in some manner into the record of the hearing.

There is no basis for the criticism of the Commissioner's actions on this application. His affidavit shows that his "independent investigation," which is sanctioned by the Banking Act (*N. J. S. A.* 17:9A–11A and *D*), consisted of nothing more than consulting a banking circular published by his own department and making a personal visit to and inspection of the locale. That this was done in order to better evaluate the evidence in the case is apparent from his decision which details the facts on which he rested his ruling, and indicates the evidence considered by him in making his findings. Furthermore, it was entirely proper for the Commissioner to use matters within his expert knowledge as long as he made them a part of the record. *Elizabeth Federal Sav. & Loan Ass'n v. Howell, supra*, at *page* 507. It is clear that the rule set forth in *Mazza, supra*, does not apply.

The main attack levelled against the ruling by the Commissioner is that the findings and conclusions set forth by him in his decision are unsupported by the evidence. Appellants also charge that the Commissioner failed to make the basic findings of fact and ultimate statutory conclusions required of him. However, their argument on this latter

point resolves itself into an attack on the sufficiency of the evidence.

It would serve no useful purpose to discuss all of the evidence. It is sufficient to note that the testimony and proofs regarding the present and future economic position and potential of the City of Plainfield, and the need or even the desirability of having another commercial bank located therein, were in direct conflict. There were qualified experts presented on both sides who expressed opinions for and against the application and set forth considerable statistical data on population growth in the area and the potential for business and commercial expanse. Plainfield's geographical and economic position was considered, and the make-up of its citizenry and the earning capacity thereof weighed. All of these factors entered into the respective predictions as to future bank deposit potential in the area.

The Commissioner, as is evidenced by his decision, considered all of the testimony and analyzed the conflicting opinions.

The substance of his findings was that the area of which Plainfield was the hub because of its location and facilities, was undergoing marked growth as to population, industry and commercial development, which meant that such area would enjoy greater prosperity with increased payrolls, increased buying power, and need for additional banking services and facilities. He accepted the applicant's estimate of deposit potential for this area as being the more reasonable. He was convinced that the proposed bank would be self-supporting within the first three years of operation, basing this conclusion on applicant's figures on anticipated deposits, which he found also to be reasonable, and on statistics issued by the Federal Reserve Bank of New York and upon a circular issued by the Department of Banking and Insurance showing operating ratios for state-supervised commercial banks for the year 1958. He recognized that commercial banks compete with savings banks and savings and loan associations for the savings dollar, but found that the

proposed bank would offer competitive interest rates as well as convenient and complete banking services. He noted that the consolidation of banking facilities in Plainfield which resulted in a single commercial bank in that community, that bank having deposits of approximately $100,000,000, and with but one branch office of another commercial bank, with that branch having deposits of $8,000,000, is a serious potential for monopoly with an undue lessening of competition in all elements of banking functions. Because of this identity of banking interests he felt that an additional bank could not be construed as excessive as was claimed by objectors. Moreover, in the Commissioner's opinion, the ratio of banking offices in the City of Plainfield to the population thereof was not an important factor because it did not recognize the area which the bank would serve or the important role played by industry and retail trade in bank deposits and bank utilizations. He found that the proposed directors possessed capacity and fitness and that the proposed capitalization of the bank was ample protection for depositors. The Commissioner summarized his findings as follows:

"In accordance with section 11(D) of The Banking Act of 1948, I find that the proposed institution will serve the public interest and that it has a reasonable promise of successful operation. I find that the individuals who are to act as directors are men of good character and possess capacity and fitness for their duties and responsibilities. I find that no fees, commissions or other compensation have been paid for the promotion of the bank or for the sale of the stock of the bank. I also find that the entire capital stock has been subscribed for, and that each subscriber has undertaken in writing to pay in cash his proportionate share of the capital stock, surplus and reserves, as specified in the certificate of incorporation.
I, therefore, approve the application of the State Bank of Plainfield."

At the outset it must be recognized that the Legislature has vested the Commissioner of Banking and Insurance with the power to grant charters to proposed banks. Of course, his power is not absolute. The Banking Act,

*N. J. S. A.* 17:9*A*–11, sets forth criteria which the Commissioner shall follow. His consideration of an application of a banking charter must be within the framework of the statute and his decision is appealable as is any other administrative ruling. *Elizabeth Federal Sav. & Loan Ass'n v. Howell, supra.* However, in reviewing a ruling by the Commissioner due recognition must be given to his expert knowledge of banking matters, and a presumption of reasonableness attaches to his decision. *Elizabeth Federal Sav. & Loan Ass'n v. Howell, supra.*

█ It is not the function of the appellate tribunal to substitute its independent judgment for that of the Commissioner. The scope of review is limited to determining whether, in the light of the nature of the matter before him and the questions presented, the Commissioner has made adequate basic findings of fact which are supported by the evidence and which in turn support his ultimate conclusions and final determination. *In Matter of Application of Howard Savings Institution,* 32 *N. J.* 29 (1960); *In Matter of Application of Millburn-Short Hills Bank,* 59 *N. J. Super.* 470 (*App. Div.* 1959).

██ In the instant case we find that the Commissioner, as set forth in his decision, made the basic findings of fact and ultimate statutory conclusions required of him. There is substantial credible evidence in the record to support his factual findings. There is therefore a reasonable basis for the Commissioner's ruling. True, the testimony was conflicting on·most of the factual issues; even the prognostications by the experts varied widely. It was the function of the Commissioner, however, to weigh this evidence and to resolve these questions, and as long as his ruling is based on "substantial persuasive relevant testimony," an appellate court will not disturb it. *In Matter of Application of Millburn-Short Hills Bank, supra.*

Some points made by appellants merit particular discussion. The first is based on *N. J. S. A.* 17:9*A*–11(*D*)(3) which reads as follows:

"D. If the commissioner shall determine * * *

(3) that the directors or managers designated in the certificate of incorporation possess capacity and fitness for the duties and responsibilities with which they will be charged;

* * * * * * * *

he shall approve the application."

On the first day of the hearing, which was had on November 25, 1958, December 3, 1958, and December 9, 1958, the applicant put in evidence written biographical sketches of the proposed directors. In his decision the Commissioner stated that he has reviewed these biographies and found that the proposed directors possess capacity and fitness for the duties and responsibilities with which they will be charged. He also observed that they were men with wide experience in such diversified fields as finance, law, medicine, pharmaceutics, manufacturing, real estate, insurance, construction, dentistry, restaurant operation and trucking.

Appellants contend that the biographical sketches were an inadequate basis for the Commissioner's ruling that the directors possess capacity and fitness for the duties and responsibilities with which they will be charged. Appellants say that the persons should have been produced at the hearing. The record, however, indicates that the procedure adopted was that the written biographies of the proposed directors were to be used, with counsel for the objectors reserving the right to call any of these persons for cross-examination if he so desired. Thereafter no request was made to have them appear at the hearing.

The biographies were competent evidence for the purpose for which they were offered and they contain sufficient facts to sustain the Commissioner's determination. The procedure of submitting written biographies of the proposed directors to the Commissioner has been heretofore approved by this court in the *Millburn-Short Hills* case, *supra*.

In support of the charge that the Commissioner erred in approving the application, appellants say that the record indicates the following: Applicant does not have a banker

to run the bank nor have any arrangements been made for the employment of experienced banking help, nor does it have a lease or contract for the proposed banking site; it has no architectural plans for the proposed bank building; it has no cost figures on construction of a bank building or equipping the same; it has no summary of payroll or operating costs.

The foregoing criticisms are unsound. It is to be expected that until the applicant ascertained whether or not a charter was to be granted, all of its plans and arrangements had to be tentative.

The application sets forth that the bank is to be located at 20–34 Somerset Street, Plainfield, New Jersey. While no contract or lease for the property has been signed, negotiations have been had with the owner who has set a price which applicant is prepared to pay. If the bank is unable to acquire this property, it would have the right to apply to the Commissioner for approval of a new location pursuant to *N. J. S. A.* 17:9A–12(*B*). Unless the Commissioner finds that the new location will serve an area substantially different from the area which would be served by the original site, he may approve the application without prior notice, publication and hearing. *N. J. S. A.* 17:9A–12(*B*).

As to type of bank building, furnishings, costs thereof, banking executive and staff, payroll and the like, there is no provision in the statute that an applicant must submit for approval detailed plans as to such matters as a prerequisite to issuance of a charter. The directors whose capacity and fitness have been determined by the Commissioner are entrusted with these responsibilities. Moreover, the record in this case indicates that tentative plans have been made as to all of these matters.

The statute, *N. J. S. A.* 17:9A–11(*C*), does provide that if the proposed bank seeks authorization to exercise agency or fiduciary powers, the Commissioner shall give special consideration to the qualifications, experience and character

of the proposed officer or officers who will have control or supervision of the proposed fiduciary activities. The present application, however, is not within this classification.

In his decision the Commissioner referred to the recent consolidation (under federal banking laws) of banking facilities in the City of Plainfield into a single commercial bank as "a serious potential for monopoly, with an undue lessening of competition in all elements of banking functions." This is a matter for the Commissioner's expert knowledge to which an appellate tribunal must accord due recognition. Of course, the Commissioner should not approve a charter application solely for the purpose of providing competition. However, healthy competition serves "the interest of the public" and is a factor to be considered. *In Matter of Application of Howard Savings Institution, supra.*

All of the other points made by appellant have been considered and lack merit.

Affirmed.